# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

W. PARKER HIX, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:11-CV-3141-RWS
AON RISK SERVICES SOUTH, :
INC. and AON GROUP, INC., :
:
    Defendants. :

## ORDER

    This case is before the Court on Plaintiff's Motion for Preliminary

Injunction Enjoining Enforcement of the Aon Covenants [2] and Defendants

Aon Risk Services South, Inc. and Aon Group, Inc.'s (collectively

"Defendants" or "Aon")  Motion for Leave to File a Supplemental

Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction

[22].  After conducting a hearing and reviewing the Record, the Court enters the

following Order.

## Background

    Plaintiff filed this action on September 16, 2011, seeking a declaratory

judgment that restrictive covenants contained in Plaintiff's Employment

Agreement are unenforceable under Georgia law, and seeking preliminary and

permanent injunctive relief barring enforcement of those covenants. Compl.,

Dkt. [1] at 1.[1] Specifically, Plaintiff challenges the non-competition, non-

solicitation, and non-disclosure covenants (the "Aon Covenants") contained in

the Employment Agreement as overly broad. Id. ¶ 12; Pl.'s Mot. Prelim.

Injunc., Dkt. [2] at 2. The facts relevant to Plaintiff's employment with Aon

and the resulting Employment Agreement are as follows:

Prior to December 2009, Plaintiff worked for Allied North America

Insurance Brokerage of Georgia, Inc. ("Allied of Georgia"), an affiliate of

Allied North America ("Allied"). W. Parker Hix Decl. in Supp. Pl.'s Mot.

Prelim. Inj. ("Hix Declaration"), Dkt. [2-1] ¶¶ 3-4. He also owned a twenty-

five percent (25%) interest in Allied of Georgia at that time. Id. ¶ 4. In

December 2009, Aon Risk Services, Inc. ("Aon Risk Services") entered into an

agreement to purchase Allied, and the acquisition was completed on January 1,

2010. Paul Henmueller Decl. in Supp. Defs.' Opp'n to Pl.'s Mot. Prelim. Inj.

("Henmueller Declaration"), Dkt. [14-1] ¶ 2. In anticipation of this acquisition,

---

[1] Plaintiff also seeks damages for breach of contract stemming from
Defendants' alleged wrongful termination of Plaintiff's employment. Compl., Dkt.
[1] at 1. This breach of contract claim, however, is not at issue in the motions
currently before the Court.

Plaintiff sold his 25% ownership interest in Allied of Georgia to Allied Group

Holdings, LLC ("Allied Group Holdings"). Hix Decl., Dkt. [2-1] ¶ 4. This sale

was memorialized in a purchase agreement entered into on December 6, 2009

(the "Purchase Agreement"). Id. The Purchase Agreement contains restrictive

covenants preventing Plaintiff from soliciting clients, hiring or soliciting

employees, and disclosing confidential information and trade secrets, which

covenants, by their terms, remain in force through December 31, 2011.

Henmueller Decl., Dkt. [14-1] ¶¶ 7-9 (citing Purchase Agreement §§ 9.1-9.3,

Dkt. [2-1] at 12-13). Plaintiff does not challenge the validity of these restrictive

covenants. Compl., Dkt. [1] ¶ 8; Pl.'s Mot. Prelim. Inj., Dkt. [2] at 5.

 In addition to the Purchase Agreement, on December 4, 2009, Plaintiff

entered into an employment agreement with Allied Group Holdings, LLC (the

"Employment Agreement"). Henmueller Decl., Dkt. [14-1] ¶ 4. Like the

Purchase Agreement, the Employment Agreement contains a set of restrictive

covenants–a "Covenant Not to Compete," "Covenant Not to Hire," and

provision governing the non-use or -disclosure of "Trade Secrets and

Confidential Information." Employment Agreement §§ 4(d), 4(e), 6(a), Dkt. [2-

1] at 23-26. These covenants are to remain in force for two years following the

termination of Plaintiff's employment, or until August 16, 2013 (with the non-

disclosure provision continuing to remain in force indefinitely). Id.; Henmueller Decl., Dkt. [14-1] ¶ 9.

On August 16, 2011, Aon terminated Plaintiff's employment and informed Plaintiff that it would seek to enforce the restrictive covenants contained in the Employment Agreement.[2]  Hix Decl., Dkt. [2-1] ¶¶ 8, 10. Plaintiff currently is unemployed but wants to continue working in the insurance business and anticipates that former customers will seek to do business with him again.  Id. ¶ 9.  He also anticipates that Aon will sue to enforce the Aon covenants to prevent him from transacting business with his former clients.  Id. ¶ 10.  Accordingly, arguing that the restrictive covenants are overbroad and unenforceable, Plaintiff seeks a "preliminary injunction to remove any obstacle to [his] engaging in gainful economic activity in Georgia without uncertainty about his rights."  Pl.'s Mot. Prelim. Inj., Dkt. [2] at 3-4.

The Employment Agreement restrictive covenants provide as follows: First, the Covenant Not to Compete provides:

> The Employee hereby covenants and agrees that, except with the prior written consent of Aon Group, the Employee (on the Employee's own behalf or on behalf of any other person or entity)

_____

[2] The Aon Defendants purport to be successors in interest to Allied Group Holdings, LLC and on that basis seek to enforce the Employment Agreement. Compl., Dkt. [1] ¶ 10.

AO 72A
(Rev.8/82)

will not, during the course of employment, and for two (2) years after the end of employment, or the period during which the Company is making Base Salary payment to the Employee pursuant to Section 3(b)(ii), compete directly or indirectly in any way with the Business. For the purposes of this Agreement, "compete directly or indirectly in any way with the Business" means to enter into or attempt to enter into (on Employee's own behalf or on behalf of any other person or entity) any business relationship of the same type or kind as the business relationship which exists between Aon Group and its clients or customers to provide services related to the Business for any individual, partnership, corporation, association or other entity who or which was a client or customer for whom the Employee worked or became familiar with during the twenty-four (24) months prior to the end of employment. "Client" or "customer" means any person or entity listed on the books of Aon Group as such.

The Employee acknowledges that there is no general geographical restriction contained in the preceding paragraph because the restriction applies only to the specified clients of Aon Group.

Nothing in this Agreement shall prohibit Employee from obtaining a livelihood for himself or his family by being engaged in the Business. The intent of the parties is that the Employee's restrictive covenant is limited to only to those clients as above specified.

Employment Agreement § 4(d), Dkt. [2-1] at 24-25. The Covenant Not to Hire

provides:

The Employee hereby also agrees, for the duration of the term of the covenant set forth in Section 4(d) of this Agreement, not to induce or attempt to induce, or to cause any person or other entity to induce or attempt to induce, any person who is an employee of Aon Group to leave the employ of Aon Group during the term of the covenant set forth in Section 4(d).

5

<u>Id.</u> § 4(e), Dkt. [2-1] at 25.  Finally, the provision governing the non-use or -

disclosure of trade secrets and confidential information reads:

> The Employee acknowledges that Aon Group's business depends
> to a significant degree upon the possession of confidential,
> proprietary and trade secret information which is not generally
> known to others, and that the profitability of the Business of Aon
> Group requires that this information remain proprietary to Aon
> Group.  The Employee recognizes that, by virtue of his
> employment by the Company, and to assist him in the solicitation,
> production and servicing of client business, he will be granted
> otherwise prohibited access to such information.  This information
> (hereinafter referred to as "Confidential Information") includes,
> without limitation: lists of clients and prospective clients; contract
> terms and conditions; client information relating to services,
> insurance, benefits programs, employees, finances, and
> compensation; copyrighted materials; corporate, management and
> business plans and strategies; compensation and revenues; methods
> and strategies of marketing; market research and data; technical
> know-how; computer software and manuals; policies and
> procedures; and the conduct of the affairs of Aon Group.
>
> The Employee shall not, except as required in the course of
> employment hereunder, disclose or use during or subsequent to the
> course of employment, any Confidential Information which has not
> been publicly disclosed (other than by Employee in breach of this
> provision).  All Confidential Information and all records and
> equipment and other materials relating in any way to Confidential
> Information shall be and remain the sole property of Aon Group
> during and after the end of employment.

<u>Id.</u> § 6(a), Dkt. [2-1] at 25-26.

## Discussion

**I.  Plaintiff's Motion for Preliminary Injunction Enjoining Enforcement
of the Aon Covenants [2]**

AO 72A
(Rev.8/82)

A preliminary injunction is an "extraordinary and drastic remedy[.]" Zadui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). To obtain such relief, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002). The Court considers whether Plaintiff has made each of the above showings so as to be entitled to preliminary injunctive relief.

A.    Substantial Likelihood of Success

1.    Legal Standard

The Court must first consider whether Plaintiff has shown a substantial likelihood of success on the merits of his claim that the Aon covenants are overbroad and unenforceable. The parties do not dispute that the enforceability of the covenants is determined with reference to Georgia law, notwithstanding the Employment Agreement's choice of Illinois law as the law governing the Agreement (§ 8(d), Dkt. [2-1] at 27). Indeed, it is well settled that courts in Georgia apply Georgia law to determine the validity of restrictive covenants in

a contract, even if the contract has a choice-of-law provision requiring the application of foreign law.  See, e.g., Manuel v. Convergys Corp., 430 F.3d 1132 (11th Cir. 2005) (affirming district court application of Georgia law to determine enforceability of non-compete agreement despite choice-of-law provision requiring application of Ohio law); Bunker Hill Int'l Ltd. v. Nationsbuilder Ins. Serv., Inc., 710 S.E.2d 662, 666 (Ga. Ct. App. 2011) (applying Georgia law to determine validity of restrictive covenants in employment contract, notwithstanding choice-of-law provision designating Illinois law to govern the contract).

Although the parties agree that Georgia law governs the analysis in this case, they dispute which legal standard under Georgia law applies.   Under Georgia law, "[i]n considering whether a restrictive covenant is enforceable, a court must first determine the level of scrutiny to apply."  Dent Wizard Int'l Corp. v. Brown, 612 S.E.2d 873, 875 (Ga. Ct. App. 2005).  "There are three levels: strict scrutiny, which applies to employment contracts; middle or lesser scrutiny, which applies to professional partnership agreements; and much less scrutiny, which applies to sale of business agreements."[3]  Id.  Under the strict

---

[3] The Court applies the law of restrictive covenants as it existed at the time the Employment Agreement was entered into.  In 2009, the Georgia legislature passed a new restrictive covenant law, O.C.G.A. § 13-8-2.1(a), permitting covenants "that

scrutiny analysis applicable to restrictive covenants in employment contracts,

the covenants will not be enforced unless "strictly limited as to time, territorial

effect, capacity in which the employee is prohibited from competing, and as to

overall reasonableness." Gordon Document Prods., Inc. v. Serv. Techs., Inc.,

708 S.E.2d 48, 52 (Ga. Ct. App. 2011) (quotations and citation omitted).

Furthermore, the "blue pencil theory of severability" is inapplicable, such that if

any provision of a restrictive covenant is found to be invalid, the entire

covenant will be held unenforceable. Id. at 52 n.4. By contrast, restrictive

covenants ancillary to the sale of a business "can generally be drafted more

broadly." Drumheller v. Drumheller Bag & Supply, Inc., 420 S.E.2d 331, 334

(Ga. Ct. App. 1992). Under the lesser scrutiny afforded to these covenants, if a

portion of the covenant is found to be invalid, "the court has tended . . . to

---

restrain in a reasonable manner," which went into effect on November 2, 2010 as a
result of the ratification of an amendment to the Georgia constitution adopting that
provision into law. Cox v. Altus Healthcare & Hospice, Inc., 706 S.E.2d 660, 663-64
(Ga. Ct. App. 2011). Plaintiff signed the Employment Agreement on December 4,
2009, before this constitutional amendment had been ratified. Accordingly, the new
law on restrictive covenants in Georgia does not apply in this case. See Bunker Hill,
710 S.E.2d at 665 n.1 ("Because the agreement at issue was entered into in 2008, we
apply the law of restrictive covenants as it existed before the November 2010
ratification of an amendment to the Constitution of Georgia adopting O.C.G.A. § 13-
8-2.1(a) into law.").

9

uphold the remaining portions of the covenant by 'blue-penciling' or severing the overly broad restrictions." Id.

As a threshold matter, the Court must decide which level of scrutiny to apply. This issue is the crux of the parties' dispute, as Defendants conceded at oral argument that should the Court apply strict scrutiny, the restrictive covenants at issue necessarily will fall. The Court thus devotes considerable attention to this issue.

Defendants contend that although the restrictive covenants appear in an employment agreement, they are nonetheless "ancillary to the sale of a business" and thus "subject to less scrutiny than those that merely are conditions to employment." Def.'s Opp'n to Pl.'s Mot. Prelim. Inj., Dkt. [14] at 11. Defendants argue that the Purchase Agreement and Employment Agreement are part of a single integrated transaction by which Defendants acquired Allied Group Holdings, LLC and Plaintiff received compensation for the sale of his shares, thus making the restrictive covenants in the Employment Agreement "ancillary to the sale of a business." Id. at 12. Plaintiff, on the other hand, argues that "where, as a part of a sale of a business, the parties enter into a contract for the sale of the business and a separate employment contract, and both contracts contain restrictive covenants, the restrictive covenants in the

10

employment agreement are subject to strict scrutiny." Pl.'s Reply in Supp. Mot. Prelim. Inj., Dkt. [19] at 1.  The Court agrees with Plaintiff and finds that strict scrutiny applies in this case.

As Plaintiff argues, it appears settled that Georgia courts, when faced with an employment contract and a separate contract for the sale of a business, both of which contain their own restrictive covenants, apply strict scrutiny to determine the validity of the restrictive covenants in the employment agreement.  The Georgia Court of Appeals stated this to be the rule in Hilb, Rogal & Hamilton Co. v. Holley, 644 S.E.2d 862, 866 (Ga. Ct. App. 2007).  In Hilb, the defendant, Holley, owned and operated an insurance business that he later sold to Hilb, Rogal & Hamilton Company of Atlanta ("HRH").  Id. at 864. As part of this transaction, the parties entered into two separate agreements, one for the sale of Holley's business and the other for Holley's continued employment with HRH.  Id. at 864-65.  The two agreements contained different restrictive covenants precluding Holley from competing with HRH or soliciting its business.  Id.  When HRH later brought suit against Holley alleging breach of the restrictive covenants in his employment contract, the trial court applied strict scrutiny to determine the covenants' validity.  Id. at 866.  The Court of Appeals affirmed, rejecting HRH's argument that strict scrutiny should not have

AO 72A
(Rev.8/82)

been applied.  Id.  In doing so, the Court stated, "This Court has consistently held that when parties execute separate contracts for the seller's sale of the business and the seller's subsequent employment and each contract contains different restrictive covenants, the restrictive covenants in the employment contract are subject to strict scrutiny."  Id.

The court reached the same result in Arnall Insurance Agency, Inc. v. Arnall, 396 S.E.2d 257, 261 (Ga. Ct. App. 1990).  In Arnall, the defendant had served as one of two general partners of an insurance business that was later acquired by the plaintiff.  396 S.E.2d at 258.  On the same day that the defendant executed the purchase and sales agreement with plaintiff's service corporation (acting as guarantor), he also entered into an employment agreement with the plaintiff.  Id. at 258-59.  The two agreements contained different restrictive covenants.  Id.

When the plaintiff later sued alleging breach of the restrictive covenant contained in the employment contract, the trial court applied strict scrutiny and found the covenant to be unenforceable.  Id. at 258.  Affirming the trial court's judgment, the Court of Appeals rejected the plaintiff's argument that the restrictive covenant was entered into "in connection with a sales agreement" such that strict scrutiny should not have applied.  Id. at 261.  The court

12

reasoned, "In the case sub judice . . . the employment contract is part of a larger

transaction. (Indeed . . . the employment contract makes reference to the sales

agreement.)[4]  Nevertheless, *we must construe the restrictive covenant contained*

*in the employment contract as just that–a covenant contained in an employment*

*contract*." Id. (emphasis added).

Applying different levels of scrutiny to restrictive covenants contained in

two separate agreements, albeit entered into as part of a single, larger

transaction, is not without justification. As the Georgia Court of Appeals

explained:

> Subjecting two restrictive covenants to different treatment, even
> though found in agreements executed as part of the same
> transaction, is consistent with the rationale behind the different
> levels of scrutiny. When one is selling a business . . ., more
> weighty consideration is being offered in exchange for the non-
> compete covenant. The business seller is receiving substantial
> consideration for the business he has built up, the value of which
> would be significantly diminished to the buyer if he were allowed
> to compete in the same market. . . . Thus, non-compete covenants
> found in sale of business . . . agreements are generally afforded

---

[4] This case also forecloses Defendants' argument that because the Purchase
Agreement and Employment Agreement both reference the other, the restrictive
covenants in the two agreements must be considered together as part of the sale of a
business. See Defs.' Opp'n to Pl.'s Mot. Prelim. Inj., Dkt. [14] at 12. The fact that
the sales contract and employment contract cross-referenced each other did not
compel the court in Arnall to treat the restrictive covenants in the employment
contract as ancillary to the sale of a business, nor does it compel the Court to do so
here.

greater degrees of latitude. If the business seller . . . also enters into a separate employment agreement with its own additional non-compete covenant, then the consideration received for that covenant is usually less (generally employment benefits such as salary and insurance coverage), subjecting it to a stricter level of scrutiny. *The context and consideration of the two restrictive covenants being different, they are subject to different levels of scrutiny.*

Russell Daniel Irrigation Co., Ltd. v. Coram, 516 S.E.2d 804, 805 (Ga. Ct. App. 1999) (emphasis added). Furthermore, it would make little sense to treat the Employment Agreement restrictive covenants as covenants made ancillary to the Purchase Agreement, which contains its own, separate covenants. As the Court of Appeals remarked in Arnall, "If, as [Defendants] contend[ ], the restrictive covenant in the employment contract should be considered part and parcel of the sales contract, why was the restrictive covenant in the sales contract necessary?" 396 S.E.2d at 261. The obvious answer is that "each covenant stands on its own. Each covenant is separate and distinct." Id.

The cases cited by Defendants at oral argument do not compel a different conclusion.[5] In American Control Systems, Inc. v. Boyce, the defendant sold his ownership interest in American Control Systems, Inc. ("ACS") to Barnes

---

[5] Nor do the cases cited by Defendants in their Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction [22-1]. *See* Part II, *infra* (addressing Defendants' Motion for Leave to File a Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction [22]).

Family Holdings, Inc., which, partly as a result of this transaction, obtained a fifty-one percent (51%) interest in ACS. 694 S.E.2d 141, 143 (Ga. Ct. App. 2010). On the same day that Boyce signed the Stock Purchase Agreement memorializing the sale of his ACS shares, he signed an employment agreement with ACS, pursuant to which he agreed to serve as its vice president and secretary. Id. The employment agreement contained several restrictive covenants. Id. When ACS later sued Boyce for breach of these restrictive covenants, the trial court applied strict scrutiny to find the covenants invalid. Id. at 144.

The Court of Appeals reversed on the basis that the restrictive covenants, although contained in an employment contract, were nonetheless "ancillary to the sale of a business" and thus subject to much less scrutiny. Id. at 145. In reaching this conclusion, however, the court cast no doubt on the validity of Hilb or Arnall. On the contrary, the court specifically cited Hilb for the general rule that "when parties execute separate contracts for the seller's sale of the business and the seller's subsequent employment and *each contract contains different restrictive covenants*, the restrictive covenants in the employment contract are subject to strict scrutiny." Id. (emphasis added). The court found

that this general rule did not apply, however, because "the contracts [before the court] [did] not contain different restrictive covenants."[6] Id.

Drumheller v. Drumheller Bag & Supply, Inc., 420 S.E.2d 331 (Ga. Ct. App. 1992) is distinguishable on the same ground as Boyce. In Drumheller, the parties entered into multiple agreements in connection with the plaintiffs' sale of their business, only one of which contained restrictive covenants. 420 S.E.2d at 333. Under these circumstances, the court analyzed whether the restrictive covenants were "entered into as part of a sale of business" or merely as part of the employment contract. Id. at 334-35.

The Court finds that the inquiry undertaken by the Court of Appeals in

_____

[6] Accordingly, faced with two agreements entered into on the same day and in connection with the sale of a business, *only one of which contained restrictive covenants*, the court considered whether the restrictive covenants should be treated as "ancillary to the sale of a business," even though they appeared in the employment agreement. As stated above, the court answered this inquiry in the affirmative, reasoning that as Boyce was a co-owner of ACS when he signed the stock purchase and employment agreements, and thus of equal bargaining power as ACS, he agreed to the restrictive covenants not solely in return for employment (as a "mere employee"), but rather in return for the relinquishment of his interest in the business. Id. at 144-45. Contrary to Defendants' suggestion at oral argument, the analysis of whether Plaintiff was a "mere employee" is not appropriate in this case because here, as in Hilb and Arnall, Plaintiff entered into a purchase agreement and employment agreement, both of which contain their own restrictive covenants. Given these facts, the Court must treat the covenants in the employment contract "as just that–[ ] covenant[s] in an employment contract." Arnall, 396 S.E.2d at 261.

16

Boyce and Drumheller is not appropriate where, as here, separate agreements each contain their own restrictive covenants.  Indeed, the rationale underlying the inquiry in those cases is inapplicable in cases concerning separate agreements with their own restrictive covenants.  In White v. Fletcher/Mayo/Assocs., Inc., the Georgia Supreme Court explained that when confronted with a restrictive covenant contained in an agreement that serves both as a stock purchase agreement and employment contract, "it is problematical whether [plaintiff's] profit constituted consideration for his covenants not to compete, or whether the sole consideration flowing to [plaintiff] in return for those covenants was his continued employment."  303 S.E.2d 746, 750 (Ga. 1983).  It likewise is problematical where the court faces a purchase agreement and separate employment agreement, both entered into as part of a single transaction, but only one of which contains restrictive covenants.  Accordingly, on those facts, it is appropriate for the court to inquire whether the restrictive covenants were entered into ancillary to the sale of a business or merely ancillary to employment.

Where the employment agreement and stock purchase agreements are separate, however, and each contains its own restrictive covenants, identifying the consideration given for those covenants is not problematical.  On those

17

facts, each restrictive covenant must be considered in the context of the specific agreement in which it is found.  Accordingly, in this case, the restrictive covenants in the Purchase Agreement must be treated as part of the consideration given by Plaintiff in exchange for the purchase of his stock.  The restrictive covenants in the Employment Agreement, on the other hand, must be treated as part of the consideration given by Plaintiff in exchange for his continued employment.

At oral argument Defendants also cited Annis v. Tomberlin & Shelnutt Assoc., Inc., 392 S.E.2d 717 (Ga. Ct. App. 1990) in support of its position that the Court must determine as a threshold factual matter whether the Aon covenants are ancillary to the sale of a business or merely ancillary to Plaintiff's employment.  The Annis court was presented with two separate agreements, a stock purchase agreement and employment contract, both of which contained a restrictive covenant.  Id. at 719-20.  The court stated, "It is unnecessary to categorize the covenant at issue as one ancillary to the sale of the business or to the employment contract because even under the narrower employment contract scope, the covenant is not overbroad."  Id. at 721.  The court went on to say,

> Even if the covenant were overbroad, it would be possible to blue pencil the agreement so as to make it enforceable. . . .  The Supreme Court has recently determined that if a contract for the

> sale of a business and an employment contract are part of the same transaction they may be construed together to supply missing elements and blue penciled to make overbroad terms valid.

Id. at 722 (citation omitted).  Annis thus appears to support the proposition that even where an employment agreement and purchase agreement both contain restrictive covenants, the court may treat the covenants in the employment contract as "ancillary to the sale of the business" and thus subject to much less scrutiny.

The Court of Appeals decision in Hilb, however, forecloses Defendants' reliance on Annis for this proposition.  The court in Hilb stated as follows:

> This Court has consistently held that when parties execute separate contracts for the seller's sale of the business and the seller's subsequent employment and each contract contains different restrictive covenants, the restrictive covenants in the employment contract are subject to strict scrutiny.  *We note that any statements to the contrary found in* Annis v. Tomberlin & Shelnutt Assocs. *are nonbinding dicta.*

644 S.E.2d at 866 (emphasis added).

Finally, Defendants cited Mohr v. Bank of New York Mellon Corp., 371 F. App'x 10 (11th Cir. 2010) at oral argument.  Mohr gives the Court the most pause but does not change the Court's conclusion that strict scrutiny applies in this case.  In Mohr, the parties entered into two agreements, one for the purchase of the plaintiffs' business, and the other for the plaintiffs' continued

19

employment with defendant. 371 F. App'x at 11. Both agreements contained a restrictive covenant: the purchase agreement contained a covenant not to compete, and the employment agreement contained non-disclosure and non-solicitation provisions. Id. at 11-13. The employment agreement also referenced the non-compete provision in the purchase agreement, and explicitly stated that the restrictive covenants were given as part of the consideration for the purchase of the business. Id.

Relying on Drumheller, the Eleventh Circuit Court of Appeals held that the restrictive covenants were "interdependent" and thus made ancillary to the sale of the business. Id. at 16. In doing so, the court rejected the plaintiffs' argument (made on the basis of Arnall) that the restrictive covenants in the employment agreement were made only ancillary to their employment. Id. at 17. This conclusion, however, was premised on facts that are not present in this case. As stated above, the employment agreement in Mohr stated that the restrictive covenants were executed as part of the consideration for the purchase of the business. Id. at 17 ("The Employment Agreement cross-referenced the covenant not to compete in the Purchase Agreement, contained additional restrictive covenants, and provided that those covenants were part of the consideration for the transaction."). In this case, although the Employment

20

Agreement is explicitly "contingent upon[ ] the acquisition of Allied Group Holdings, LLC by Aon Group, Inc." (page 1, Dkt. [2-1] at 19), it does not provide that the restrictive covenants in the Employment Agreement have been given in consideration for the purchase of Plaintiff's business interest.

The facts of this case are thus akin to <u>Arnall</u> and distinguishable from <u>Mohr</u>. Indeed, the <u>Mohr</u> court distinguished the facts of <u>Arnall</u> as follows: "In *Arnall* . . . the covenantors executed separate employment and sales agreements with independent restrictive covenants, such that each covenant stood on its own." <u>Id.</u> at 17 (citations omitted). Here, the restrictive covenants in the Employment Agreement are wholly separate from the covenants in the Purchase Agreement and thus must be considered on their own–as restrictive covenants in an employment contract.

Based on the foregoing, the Court concludes that strict scrutiny must be applied to determine the validity of the restrictive covenants in the Employment Agreement.

2.    *Analysis*

Having determined that the Aon covenants are subject to strict scrutiny, little analysis is required to determine whether Plaintiff has shown a substantial likelihood of success on the merits. Defendants conceded at oral argument that

21

should the Court apply strict scrutiny to the covenants, the covenants necessarily will be held invalid.[7]  Given this concession by Defendants, and the Court's determination that strict scrutiny applies, it necessarily follows that Plaintiff has shown a substantial likelihood of success on the merits of his claim that the Aon covenants are unenforceable under Georgia law.

B.    Irreparable Harm and Balance of the Harms

The Court also finds that Plaintiff has shown a threat of irreparable harm should the Court not issue a preliminary injunction, and that the harm he would suffer in the absence of a preliminary injunction would outweigh the harm Defendants would suffer as a result of its issuance.  The Court agrees with Plaintiff that should a preliminary injunction not issue, Plaintiff will suffer irreparable harm in the form of lost employment opportunities.  Contrary to Defendants' argument, this harm is not diminished by the fact that Plaintiff still is bound by the Purchase Agreement restrictive covenants through December 31, 2011.  In the absence of a preliminary injunction, Plaintiff could not represent to prospective employers, with any degree of certainty, that he will be available for employment after December 31, 2011, despite having shown a

---

[7] Defendants do not argue in their briefs, either, that the Aon covenants could survive strict scrutiny.

substantial likelihood that the restrictive covenants in the Employment Contract will be held unenforceable. The employment opportunities Plaintiff would lose as a result of this uncertainty constitutes irreparable harm.

Furthermore, this harm outweighs the harm Defendants would suffer as a result of a preliminary injunction. The Court has determined that strict scrutiny applies to determine the validity of the Aon covenants, and Defendants conceded at oral argument that the covenants cannot survive a strict scrutiny analysis. Accordingly, it cannot harm Defendants to enjoin covenants that Defendants have conceded are invalid.

C.     Public Interest

Finally, the Court also finds that enjoining the restrictive covenants would not disserve the public interest. Given Defendants' concession that the covenants are invalid, the public cannot possibly be disserved by an injunction barring their enforcement.

D.     Conclusion

Because the Court finds that Plaintiff has shown (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable harm in the absence of a preliminary injunction; (3) that Defendants will suffer no harm as a result of the issuance of a preliminary injunction; and (4) that the public

interest will not be disserved by the issuance of a preliminary injunction, the

Court hereby **GRANTS** Plaintiff's Motion for Preliminary Injunction Enjoining

Enforcement of the Aon Covenants [2].

**II.** **Defendants' Motion for Leave to File a Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction** [22]

The Court also **GRANTS** Defendants' Motion for Leave to File a

Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary

Injunction [22]. In its Supplemental Memorandum [22-1], Defendant cites

three additional cases that purportedly support its argument that strict scrutiny

does not automatically apply to the Aon Covenants, but rather that the Court

must make the threshold factual determination of whether the covenants were

entered into ancillary to the sale of Plaintiff's business interest or merely

ancillary to his employment. These authorities, however, do not change the

Court's conclusion that strict scrutiny applies.

First, two of the cases, Rinks v. Courier Dispatch Group, Inc., No. 01-

CV-0678, 2001 WL 34090167 (N.D. Ga. Apr. 11, 2001) and Dalrymple v.

Hagood, 271 S.E.2d 149 (Ga. 1980), are factually distinguishable in that neither

case involved separate purchase and employment agreements that each

contained its own restrictive covenants. Instead, these cases fall under the

rubric of <u>Boyce</u> and <u>Drumheller</u>, distinguished above, and do not alter the Court's analysis in this case. The third case cited by Defendants, <u>Clower v. Orthalliance, Inc.</u>, 337 F. Supp. 2d 1332 (N.D. Ga. 2004) is similarly unpersuasive as it relies on <u>Drumheller</u> and was decided before the court's later decision in <u>Hilb</u>.

### Conclusion

Based on the foregoing, the Court **GRANTS** Defendants Aon Risk Services South, Inc. and Aon Group, Inc.'s Motion for Leave to File A Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction [22] and, having considered the additional authorities cited in Defendants' Supplemental Memorandum [22-1], **GRANTS** Plaintiff's Motion for Preliminary Injunction Enjoining Enforcement of the Aon Covenants [2].

**SO ORDERED**, this  22nd  day of November, 2011.

RICHARD W. STORY
United States District Judge

AO 72A
(Rev.8/82)